IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES EUGENE HOTCHKISS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16−cv−0752−MJR |
| | ) |
| A. DAVID, and | ) |
| B. WOODS | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff James Hotchkiss, an inmate in Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests compensatory damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

### The Complaint

Plaintiff had a hip replacement and a partial knee replacement on his left leg prior to his incarceration. (Doc. 1-2, p. 1). He was given a low bunk permit for six months on April 15, 2015 after receiving care for a slow-healing wound and MRSA. (Doc. 1-2, p. 1) (Doc. 3-4, p. 16). He was also prescribed Naproxen. (Doc. 1-2 p. 1).

Plaintiff was referred to the doctor on July 8, 2015, after he complained about constant pain in his left femur and left knee. (Doc. 4-2, p. 26). Plaintiff told Dr. David that he was having difficulty keeping up with other inmates and wanted a slow walk

permit and a quad cane.  (Doc. 1-2, p. 1-2).   On July 13, 2015, David wrote an order stating that Plaintiff did not have a medical need for a cane or slow walk permit.  (Doc. 1-5, p. 1-2).  David noted Plaintiff's reports of pain and occasional falls, but observed that Plaintiff had a normal gait with ambulation.  (Doc. 4-2, p. 29).  Medical records show that Plaintiff was issued ibuprofen for his complaints of pain on July 21, 2015. (Doc. 4-2, p. 32). David then changed the prescription to Naproxen.  (Doc. 4-2, p. 33). Plaintiff did not complain about his pain again, despite receiving treatment for many other medical issues, until October 2015.  (Doc.  3-4, p. 15).

Plaintiff placed a sick call request slip to see David to get his low bunk permit renewed on October 3, 2015.  (Doc. 1-2, p. 1).  At the appointment, David reviewed Plaintiff's medical records, but did not perform a physical examination.  (Doc. 1-2, p. 1). Medical records submitted by Plaintiff show that David observed Plaintiff's gait and noted that he ambulated well.  (Doc.  4-3, p. 16).  He told Plaintiff that he does not issue lower bunk permits anymore for inmates with broken bones or artificial limbs, but rather only for inmates with stroke and seizure issues.  (Doc. 1-2, p. 1-2).  Neither the nurse's note nor David's note reflect subjective complaints of pain during the respective visits; only that Plaintiff was requesting the permit.  (Doc. 4-3, p. 15-16).  David told Plaintiff to exercise more and denied his requests.  (Doc. 1-2, p. 2).

On October 14, 2015, Plaintiff placed a sick call slip in order to see the doctor for pain in his left hip and left knee.  (Doc. 1-2, p. 4).  Plaintiff was granted a pass for October 20, 2015. (Doc. 1-2, p. 4).  He saw Woods.  (Doc. 1-2, p. 4).  Woods gave him the

same pain medication he was prescribed on April 15, 2015.  (Doc. 1-2, p. 4).  Woods' notes indicate that Plaintiff reported his pain had increased "since the weather turned cold." (Doc. 4-3, p. 20).  Woods' notes also indicate that Plaintiff requested Naproxen and was given Naproxen.  (Doc. 4-3, p. 20)

Plaintiff's prescription was changed to 600 mg of ibuprofen on November 15, 2015.  (Doc. 1-2, p. 5).  Woods then changed the medication to Indocin caps on November 17, 2015.  (Doc. 1-2, p. 5).  Plaintiff explained to Woods on November 20, 2015 that his current housing assignment required him to walk up two flights of stairs; Woods issued an indefinite low bunk permit on that same day.  (Doc. 1-2, p. 6).

On December 1, 2015, Plaintiff saw Woods again, and requested a low gallery permit.  (Doc. 1-2, p. 6).  Woods issued an indefinite low gallery, low bunk permit on December 1, 2015.  (Doc. 1-2, p. 7).  Woods' notes reflect that he evaluated Plaintiff's gait for a slow walk permit at that time and found the gait steady, Plaintiff's speed adequate, and his bilateral strength good.  (Doc. 4-3, p. 31).  Plaintiff saw Woods another time on February 8, 2016.  (Doc. 1-3, p. 1).  On this date, he was able to show Woods his scars from his surgeries.  (Doc. 1-3, p. 1).  Plaintiff requested a slow walk permit at this time and Woods issued him one.  (Doc. 1-3, p. 1-2).

Plaintiff submitted another nurse sick call slip on February 13, 2016 because he alleges that the medication he was on was not addressing his hip and leg pain.  (Doc. 1-3, p. 2).  Plaintiff also complained that he needed orthopedic shoes and not boots.  (Doc. 1-3, p. 2).  Plaintiff was referred to Woods.  (Doc. 1-3, p. 2).  Woods prescribed a

Page **4** of **10**

Neurontin, but stated that he wanted to try the medication before addressing Plaintiff's request for orthopedic shoes. (Doc. 1-3, p. 4).

Plaintiff put in a sick call slip on March 7, 2016 due to numbness in his left heel. (Doc. 1-4, p. 5). On March 11, 2016, Woods examined his heel. (Doc. 1-4, p. 5). Woods prescribed an anti-inflammatory and told Plaintiff that if he did not improve, Woods would order an x-ray. (Doc. 1-4, p. 5).

Plaintiff was called again on March 17, 2016. (Doc. 1-4, p. 6). He told the nurse that he had been experiencing light-headedness and dizziness. (Doc. 1-4, p. 6). The nurse told Plaintiff his blood pressure was low. (Doc. 1-4, p. 7). Plaintiff then met with Woods again. (Doc. 1-4, p. 7). Woods ordered an x-ray and told Plaintiff that his blood pressure would be monitored. (Doc. 1-4, p. 7). X-rays were taken on March 21, 2016. (Doc. 1-4, p. 8).

Plaintiff placed another request slip in on March 31, 2016, regarding his request for a quad cane. (Doc. 1-4, p. 10-11). Plaintiff was seen again by Woods on April 6, 2016, at which time Woods ordered a quad cane. (Doc. 1-4, p. 11). Woods also confirmed that one of Plaintiff's legs was shorter than the other. (Doc. 1-4, p. 11).

On May 11, 2016, Plaintiff received a renewal of his slow walk permit. (Doc. 1-4, p. 11).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into two counts. The parties and the Court will use these designations

in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1 – Defendants David and Woods were deliberately indifferent to Plaintiff's pain in his left hip, knee and foot;**

**Count 2: Defendant Woods was deliberately indifferent to Plaintiff's blood pressure when it was low on March 17, 2016 by not checking it again on March 21, 2016**

Both of Plaintiff's claims must be dismissed with prejudice because Plaintiff's allegations and the medical records he submitted to the Court do not show that Plaintiff is entitled to relief. The Court first notes that in lieu of filing a traditional Complaint, Plaintiff's Complaint instead refers to "the file that was kept on a daily basis," which he attached as a "Petition." That file documents certain medical visits, but it also contains many notations that treatment wasn't working or wouldn't work, even though given the nature of the document, those notations were likely made contemporaneously with the doctor's visit starting treatment.

In order to state a clam for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate

and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may be shown where medical providers persist in a course of treatment known to be ineffective. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

As to **Count 1,** while Plaintiff's complaints of chronic pain due to his old injuries are sufficient to suggest that he may suffer from a serious medical need at this time, Plaintiff's allegations of deliberate indifference are frivolous. Plaintiff has alleged that he suffered pain that went untreated for six months, between April 2015 and October 2015. This is contradicted by the medical records submitted by Plaintiff. "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The medical records show that Plaintiff complained of pain once in July, and that David evaluated it and gave him pain medication. Plaintiff then presented several other conditions to the medical team, but did not bring up his pain again until October. Plaintiff therefore has no claim that David was deliberately indifferent to his pain between April and October because he only complained of it once

and never told David that the medication was not working or that his pain had returned until October.

According to Plaintiff, he only saw David on one other occasion, in October, when David declined to issue him medical permits. The medical records do not reflect that Plaintiff complained of pain but rather that he requested permits based on his past surgeries. Plaintiff alleges that David failed to examine him, but the medical records reflect that David observed Plaintiff's gait and reviewed his medical records. Evaluating the gait in order to determine the appropriateness of permits is not deliberate indifference. *See McArthur v. Tilden*, -- F. App'x --, No. 13-cv-1248, 2016 WL 4821081 at *2 (7th Cir. 2016) (finding no deliberate indifference where physician declined to provide orthopedic shoes after observing the plaintiff's strong gait).

Plaintiff argues at various times in his "Petition" and exhibits that a doctor has to touch him to properly examine him and that it is insufficient for a medical professional to merely speak to him about his reported symptoms, but no case law establishes that taking a medical history or hearing subjective symptoms are somehow inappropriate methods of examination. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("[S]ubjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition."). Plaintiff's medical records show that when Plaintiff requested permits from David, he evaluated Plaintiff for those permits, and when Plaintiff complained of pain, David gave him pain medication. This is not deliberate indifference.

As to Brooks, Plaintiff's own allegations establish that every time he asked Brooks for a specific permit or complained of pain, Brooks issued the permit, changed the medication, and ordered further diagnostic testing. Plaintiff repeatedly argues that the fact that he was given a permit at some point in time means that he should have gotten that permit earlier in time. But that is not the standard, and Plaintiff's position fails to take into account that his condition may be progressive or degenerative. Physicians are permitted to try conservative treatment first, like medication, before moving on to more drastic and invasive measures. And medication changes can show that a physician was actively trying to treat a patient's condition. *Gray v. Martin*, -- F. App'x --, No. 15-3304, 2016 WL 4945468 at *2 (7th Cir. 2016) (upholding dismissal pursuant to 1915A where plaintiff had alleged that doctors merely changed medications to address his persistent cough). Plaintiff's own statement of events establishes that different medications were tried, and as he continued to complain of pain, more therapeutic permits were issued. This is not deliberate indifference, and **Count 1** will be dismissed with prejudice.

As to Plaintiff's **Count 2** regarding his blood pressure, Plaintiff never alleged that he suffered any harm from the single low blood pressure reading. *Gray*, 2016 WL 4945468 at *2. Plaintiff also does not allege that he continues to suffer from untreated low blood pressure or that he did any time after March 21. Plaintiff's contention appears to be that if his blood pressure was truly going to be monitored, it should have been taken again at the time he received an x-ray for his complaints of chronic pain. But

the Court can find no support in the case law that failing to take a subsequent blood pressure reading four days after a low blood pressure reading is so far afield from considered medical judgment so as to state a claim for deliberate indifference. It is also unlikely that an x-ray technician would be responsible for checking blood pressure. Thus **Count 2** will also be dismissed with prejudice.

## Pending Motions

As Plaintiff's case will be dismissed with prejudice, his Motion to Recruit Counsel is **MOOT**. (Doc. 3).

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** are frivolous and fail to state a claim upon which relief may be granted, and thus are **DISMISSED** with prejudice. Defendants **David** and **Woods** are **DISMISSED** from this action with prejudice.

Plaintiff is advised that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**
**DATED: September 22, 2016**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**